GARY E. DEVLIN (SBN 210517)
gdevlin@hinshawlaw.com
ELVIN I. TABAH (SBN 286369)
etabah@hinshawlaw.com
HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd., Suite 800
Los Angeles, CA 90025
Telephone: 310-909-8000
Facsimile: 310-909-8001

Attorneys for Defendants OCWEN LOAN SERVICING, LLC and U.S. BANK NATIONAL ASSOCIATION, as Trustee under Pooling and Servicing Agreement dated as of July 1, 2004 MASTR Asset-Backed Securities Trust 2004-FRE1 Mortgage Pass-Through Certificates, Series 2004-FRE1, erroneously sued separately as U.S. BANK NATIONAL ASSOCIATION and MASTR ASSET BACKED SECURITIES TRUST 2004-FRE1

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM C. WATSON and SHARON E. WATSON,<br><br>Plaintiffs,<br><br>vs.<br><br>OCWEN LOAN SERVICING, LLC; U.S. BANK NATIONAL ASSOCIATION; MASTR ASSET BACKED SECURITIES TRUST 2004-FRE1; WESTERN PROGRESSIVE, LLC; and DOES 1-20, inclusive,<br><br>Defendants. | Case No. 5:18-cv-00273-JGB (SPX)<br>(Honorable Jesus G. Bernal, Ctrm. 1)<br><br>**REPLY IN SUPPORT OF MOTION TO DISQUALIFY**<br><br>Date:     February 25, 2019<br>Time:    9:00 a.m.<br>Ctrm:    1<br><br>Complaint Filed: 12/26/17<br>Trial Date:           Not Set |

HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
310-909-8000

1
REPLY IN SUPPORT OF MOTION TO DISQUALIFY
303198573v1 1005257

## MEMORANDUM OF PONTS AND AUTHORIIES

### I. INTRODUCTION

Plaintiffs William C. Watson and Sharon E. Watson oppose Defendants' motion to disqualify their counsel Robert Bonito (the "Motion") by saying a bunch of nothing. Plaintiffs claim Mr. Bonito is an unnecessary "messenger" but then concede Mr. Bonito will, at the very least, testify regarding one of the only two issues in this case. Plaintiffs claim Mr. Bonito's testimony duplicates Plaintiffs, but then fail to provide any evidence of what Plaintiffs would (or even could) testify about, let alone how the testimony would duplicate Mr. Bonito's testimony.

Plaintiffs claim that Defendants' motion "provides conclusory argument without valid substantiation" but then intentionally ignores the declaration of Denetta Scott submitted with the motion, as well as their own Rule 26 disclosures, written discovery responses, and allegations of the operative complaint.

Finally, Plaintiffs' opposition papers surreptitiously misrepresent the burden requirements for a defendant in a disqualification motion, and then fail to provide any challenge to this askew burden since Plaintiffs' opposition papers lack evidence and rest on hearsay. Alas, Plaintiffs' opposition papers say nothing; Plaintiffs simply talk out of both sides of their mouth. Plaintiffs provide no reason for the Court to rule in their favor—they don't even deny that their Counsel will testify. The Court should disqualify Plaintiffs' counsel Robert Bonito.

### II. MR. BONITO IS A NECESSARY WITNESS

Plaintiffs first oppose the Motion by denouncing Mr. Bonito's status as a necessary witness. Plaintiffs argue against Mr. Bonito's necessity as a witness because "it is the Plaintiff's interpretation and not that of counsel for Plaintiff that may be at issue. . . Bonito is not a Plaintiff. Bonito is not a necessary witness. . ." (Dkt. 28, Plaintiff's Opposition to Defendant's Motion to Disqualify Robert Bonito as Counsel for Plaintiffs (the "Opposition") p. 10 lns 1-6.) In addition to this

HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
310-909-8000

2
REPLY IN SUPPORT OF MOTION TO DISQUALIFY

303198573V1 1005257

statement being factually baseless, as Plaintiffs provide no declaration regarding their testimony, and legally baseless, as Mr. Bonito's status as a non-plaintiff is irrelevant, the statement also rings false.

As stated throughout the Motion, Plaintiffs' First Amended Complaint ("FAC") directly implicates Mr. Bonito. Again, the FAC repeatedly alleges Defendants' former counsel Denetta Scott made "oral representations" concerning "clear and marketable title" and the down payment, which purportedly induced Plaintiffs to enter into the Loan Modification Agreement ("LMA"). (Dkt.12, ¶19, 23, 39) Also, Plaintiffs themselves list Mr. Bonito as a witness in their Rule 26 disclosures concerning these representations.

As stated in the Motion, confirmed in Plaintiffs' written discovery responses, and unrebutted by Plaintiffs in the Opposition, neither Plaintiff ever spoke with Denetta Scott. Ms. Scott only spoke with Mr. Bonito. Furthermore, Ms. Scott's declaration (which Plaintiffs conveniently ignore) directly refutes the central tenants of the FAC regarding these purported representations. Specifically, Ms. Scott denies representing to Plaintiffs that the issuance of clear and marketable title served as a condition predicate for the LMA or that the down payment would be credited to the New Principal Balance. (Declaration of Denetta Scott, ¶4-6)

Thus, as here, where Plaintiffs predicate their FAC on representations made between counsel only; representations which Defendants' former counsel Ms. Scott staunchly denies, then who else but Mr. Bonito can testify? Unless the Court will determine this matter without any parole evidence or testimony from the Plaintiffs, Plaintiffs cannot possibly prove the allegations contained in the FAC without Mr. Bonito's testimony. Therefore, he should be disqualified as Counsel.

///

///

///

### III. MR. BONITO'S TESTIMONY WOULD NOT DUPLICATE PLAINTIFFS

Plaintiffs also oppose the motion by claiming Mr. Bonito's potential testimony merely duplicates Plaintiff William Watson's testimony. This argument makes no sense. Aside from Plaintiff William Watson submitting no evidence concerning his potential testimony, let alone that his testimony duplicates Mr. Bonito's testimony, the Plaintiffs' Opposition confirms Mr. Bonito's testimony could not possibly duplicate Mr. Watson's. Indeed, Plaintiffs confirm as much through their concession that Mr. Bonito *will* testify about the title issue; the title issue being one of only two issues in this case. (Opposition p. 7 lns. 21-22).

Again, Plaintiffs predicate the FAC on "oral representations" concerning "clear and marketable title" and the down payment, which Plaintiffs claim induced them to enter into the LMA. (Dkt.12, ¶19, 23, 39) Further, as stated in the declaration of Denetta Scott (which Plaintiffs ignore) the settlement and loan modification agreements were negotiated and discussed as between counsel only. Moreover, Ms. Scott staunchly denies representing to Plaintiffs that the issuance of clear and marketable title served as a condition predicate for the LMA or that down payment would be credited to the New Principal Balance. (Declaration of Denetta Scott, ¶5&6) Mr. Watson cannot possibly testify about these facts. Even assuming Mr. Bonito acted as mere "messenger," the distinction makes no difference here where the lawsuit arises from, at the very least, a lost translation as Denetta Scott denies receiving Mr. Bonito's purported message. ***To be clear, without Mr. Bonito's testimony, Plaintiffs cannot possibly prove the allegations contained in the FAC.***

Finally, as it relates to the two central issues, it is unclear what Plaintiffs could testify about. Regarding the issue of title, the FAC unambiguously alleges that "Plaintiffs were provided with oral representations from OCWEN's legal

HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd,
Suite 800
Los Angeles, CA 90025
310-909-8000

4
REPLY IN SUPPORT OF MOTION TO DISQUALIFY

303198573V1 1005257

counsel Denetta Scott, that clear title was held by the alleged beneficiary MABS. As such, it was agreed and understood, and specifically set forth in the LMA, that a clear and marketable title policy would be issued which was a condition to the LMA becoming effective, and also that the LMA would be recorded in the Riverside County Recorder Office." (Dkt. 12, ¶19) Again, Plaintiffs cannot testify about any "oral representation" or agreement since they never spoke with Denetta Scott. As such, Plaintiffs cannot offer any parole evidence.

Similarly, regarding the issue concerning the application of the down payment, according to the FAC "[p]rior to signing the LMA or making any payments whatsoever to defendants, it was represented in writing by OCWEN and agreed upon by Plaintiffs, that the new principal balance owed was to be $400,900.00. . . There was no requirement for any trial payment, down payment, initiation payment or otherwise that needed to be paid to arrive at the new principal balance." (Dkt.12, ¶21). Again, Denetta Scott specifically denies representing to Mr. Bonito that new principal balance came into effect without regard to the down payment. Indeed, she represented the opposite via a letter to Mr. Bonito confirming that the New Principal Balance of $400,900.00 came into effect only after the application of the down payment. (Declaration of Denetta Scott, ¶6) Again, neither Plaintiff can testify about agreements between counsel nor the contents of letters directed between counsel. Given these facts, Plaintiffs cannot offer any parole evidence; any parole evidence could only come from Mr. Bonito. Therefore, he should be disqualified as counsel.

### IV. CALIFORNIA RULE 3.7 RECOGNIZES EXCLUDING A LAWYER WHEN HE IS A NECESSARY WITNESS

Plaintiffs also oppose the motion by claiming this case does not align with New California Rule 3.7. With exceptions not applicable here, New California Rule 3.7 mandates disqualification of counsel when counsel serves as a necessary

witness. The California State Bar designed new rule 3.7 to mirror ABA Model Rule 3.7. *See* Rule 3.7, Comments, Executive Summary ("The Commission is recommending the adoption of the Model Rule framework"). California Rule 3.7 codifies the Model Rule's requirement that any attorney be disqualified if he or she is "likely" to be a witness unless an exception applies.

Plaintiffs obfuscate this rule by circularly arguing that "the current facts in this matter do not even constitute a close call on the issue of disqualification."(Opposition p. 12 lns. 1-2.) Although a cogent argument would focus on whether Mr. Bonito status as a "necessary witness" should disqualify him, Plaintiffs opposition deftly ignores any such discussion.

In *Caluori v. One World Techs., Inc.*, for instance, the court found that the plaintiff's attorney, who previously prosecuted patents on the plaintiff's behalf, could not represent plaintiff in the current patent infringement litigation because he "had intimate knowledge concerning the patent and its prosecution history" such that he "fell squarely within Rule 5-210's prohibition against acting as both lawyer and witness." *Calouri v. One World Techs., Inc.*, No. CV 07-2035 CAS (VBKx), 2012 U.S. Dist. LEXIS 77924, 2012 WL 2004173, at *4-6 (C.D. Cal. June 4, 2012). The *Calouri* court further ruled that the plaintiff's consent to the attorney's testimony "did not cure the conflict in light of the [c]ourt's separate duty to ensure the integrity of judicial proceedings." *Id.*

Similarly, in *Kennedy v. Aldridge*, 201 Cal. App. 4th 1197, 1201 (2011), in disqualifying counsel, the Court noted that there was a "near certain prospect" that the disqualified counsel would have to testify in the litigation at issue. *Id.* at 1200.

Finally, in *Colby v. Newman*, a Central District Court denied a motion to disqualify defense counsel where the plaintiffs claimed they intended to call defense counsel "as a witness to testify as to parol evidence supporting Plaintiff's interpretation of the [asset purchase agreement] and the existence of a modification." *Colby v. Newman*, 2012 U.S. Dist. LEXIS * 15(C.D. 2012) In

denying the motion, the Court ruled "Plaintiffs have made no showing that [defense counsel] knew how the parties "in fact" interpreted the document, or that he was a witness to the asserted parol evidence or oral modifications." *Id.* The Court noted, however, that it would revisit the decision if it came to light during the proceedings that defense counsel was a percipient witness to the oral modifications in the asset purchase agreement. *Id.* fn. 1.

Here, this case falls squarely within the line of cases where counsel should be disqualified as a necessary witness under the attorney-advocate rule. Like *Kennedy*, it is a "near certain prospect" that Mr. Bonito will testify. Furthermore, here, unlike *Colby*, Plaintiffs claim that Mr. Bonito did know "in fact" how the parties interpreted the LMA and that he acted as the sole percipient participant to the alleged parole evidence which formed the LMA; and, thus, the basis of this action. Despite Plaintiffs' circumlocutions, Plaintiffs cannot escape the fact that this case hinges on the testimony of their counsel. Indeed, Plaintiffs' roundabout Opposition failed to address the potential testimony of either Plaintiff. The reason is simple: Plaintiffs cannot prove their case without Mr. Bonito's testimony. Therefore, he should be disqualified as counsel.

### V. DEFENDANTS MET THEIR BURDEN TO DISQUALIFY COUNSEL WHILE PLAINTIFFS FAILED TO MEET THEIR BURDEN

Finally, Plaintiffs claim Defendants did not satisfy their burden to disqualify counsel. Not so. A party meets its burden by establishing "present concerns and not concerns which are merely anticipatory and speculative." *In re Marvel*, 251 B.R. 869, 871 (N.D. Cal. 2000) Here, Defendants satisfied their burden by providing legitimate concerns arising out of Mr. Bonito's dual role as advocate and potential witness. Plaintiffs list Mr. Bonito as one of only four witnesses in their Rule 26 disclosures. Plaintiffs' discovery responses confirm they never spoke with Denetta Scott or any attorney for Defendants in connection with the drafting and

understanding of the LMA. Plaintiffs also were not percipient witnesses to the discussions concerning the LMA which form the basis of the FAC. And, as repeatedly stated, Denetta Scott denies Plaintiffs' allegations concerning title and the down payment. Thus, Mr. Bonito undoubtedly serves as a necessary witness for Plaintiffs. They cannot prove their case without his testimony. There is no speculation that Mr. Bonito will serve as a witness. As a matter of law, Mr. Bonito's dual role taints the fairness of the judicial proceedings. *See Kennedy*, 201 Cal. App. 4th at 1210 ("***the advocate-witness dilemma. . . robs the trial of that appearance of fairness*** which should characterize every court hearing") (emphasis added). No requirement exists, as Plaintiffs disingenuously suggest, for Defendants to provide specific facts how Mr. Bonito's status as key witness strips the integrity of the judicial process. The fact that he is a key witness (and perhaps the *only* witness on key issues) speaks for itself.

Furthermore, contrary to Plaintiffs' contention Defendants failed to meet its burden, it is actually Plaintiffs who failed to satisfy their burden. Nothing in Plaintiffs' Opposition dispels Mr. Bonito's necessity as a witness. Plaintiffs provided no evidence of their testimony, ignored the declaration of Denetta Scott, and disregarded their own allegations, discovery responses, and Rule 26 disclosures in their roundabout Opposition. Even assuming Mr. Bonito served as a mere "messenger" as Plaintiffs characterize him, Plaintiffs never explain how his status as "messenger" somehow negates his necessity as a witness, particularly where the instant lawsuit derives from the vestiges of this messages' kerfuffle.

Next, Plaintiffs claim the disqualification will cause substantial hardship to the Plaintiffs due to their current medical conditions. Plaintiffs provide no declaration regarding their medical condition or doctor's notes to buttress these maladies. Instead, Plaintiffs only provide the declaration of their counsel. As to Plaintiffs' medical condition, treatment, and effects thereto, the declaration of Plaintiffs' counsel constitutes inadmissible hearsay. **Plaintiffs' counsel cannot**

**prove the truth of his clients' medical condition and treatment through his own declaration.** Fed. R. Evid. 801(c) ("'hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."). The Court must disregard any and all statements concerning Plaintiffs' medical condition as inadmissible hearsay. Again, the Plaintiffs strangely choose to oppose the instant Motion without offering a scintilla of evidence.

Even if the Court accepted the foundationless hearsay statements of Plaintiffs' counsel concerning Plaintiffs' medical conditions, Plaintiffs neither explain their incapability of obtaining new counsel nor simply divest their Counsel of his ability to testify. If Plaintiffs merely forbade Mr. Bonito from testifying about any issue in this litigation (since they claim he's just a "messenger"), then the instant Motion becomes moot. Instead of disavowing Mr. Bonito from testifying, Plaintiffs walk the tightrope of saying nothing, while confirming Mr. Bonito *will* testify about key issues.

That said, the instant Motion does not preclude Mr. Bonito from being a witness. Rather, the Motion seeks to disqualify Mr. Bonito since he is a witness. There is no gamesmanship here. The integrity of the judicial process and Defendants' right to a fair trial should not be compromised by Plaintiffs and their Counsel. *See Kennedy*, 201 Cal. App. 4th at 1209-1211("the advocate-witness dilemma. . . robs the trial of that appearance of fairness which should characterize every court hearing. . .the opposing counsel may be handicapped in challenging the credibility of the lawyer when the lawyer also appears as an advocate in the case.")

Plaintiffs' counsel's role as witness and advocate will surely effect the jury's ability to evaluate his testimony; as well as Defendants' ability to challenge Plaintiffs' counsel's credibility. *People v. Donaldson*, 93 Cal. App. 4th 916, 928 (Cal. Ct. App. 2001) ("**The very fact of a lawyer taking on both roles will affect the way in which a jury evaluates the lawyer's testimony, the lawyer's**

HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
310-909-8000

9
REPLY IN SUPPORT OF MOTION TO DISQUALIFY
303198573V1 1005257

advocacy, and the proceedings themselves.") (Emphasis added) Therefore, Plaintiffs' Counsel Robert Bonito should be disqualified as counsel.

## VI. CONCLUSION

For the foregoing reasons, the Court should grant the Motion and disqualify Plaintiffs' counsel Robert Bonito.

DATED: February 11, 2019  HINSHAW & CULBERTSON LLP

By: *Elvin Tabah*
GARY E. DEVLIN
ELVIN I. TABAH
Attorneys for OCWEN LOAN SERVICING, LLC and U.S. BANK NATIONAL ASSOCIATION, as Trustee under Pooling and Servicing Agreement dated as of July 1, 2004 MASTR Asset-Backed Securities Trust 2004-FRE1 Mortgage Pass-Through Certificates, Series 2004-FRE1, erroneously sued separately as U.S. BANK NATIONAL ASSOCIATION and MASTR ASSET BACKED SECURITIES TRUST 2004-FRE1

# CERTIFICATE OF SERVICE

*William C. Watson, et al. v. Ocwen Loan Servicing, LLC, et al.*
Case No. 5:18-cv-00273-JGB (SPX)

**STATE OF CALIFORNIA, COUNTY OF SAN DIEGO**

I am a citizen of the United States and employed in Los Angeles, California, at the office of a member of the bar of this Court at whose direction this service was made. I am over the age of 18 and not a party to the within actions; my business address is 11601 Wilshire Blvd., Los Angeles, California 90025.

On **February 11, 2019**, I served the document(s) entitled, **REPLY IN SUPPORT OF MOTION TO DISQUALIFY**, on the interested parties in this action by placing true copies thereof enclosed in a sealed envelope(s) addressed as stated below:

**SEE ATTACHED SERVICE LIST**

☐ **(BY MAIL)**: I deposited such envelope in the mail at Los Angeles, California with postage fully prepaid. I am readily familiar with this firm's practice of collection and processing correspondence for mailing. Under that practice it would be placed for collection and mailing, and deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

☐ **(VIA OVERNIGHT MAIL)**: I am "readily familiar" with the firm's practice of collection and processing correspondence for overnight delivery. Under that practice it would be deposited in a box or other facility regularly maintained by the express service carrier, or delivered to an authorized courier or driver authorized by the express service carrier to receive documents, in an envelope or package designated by the express service carrier with delivery fees paid or provided for, addressed to the person on whom it is to be served, at the office address as last given by that person on any document filed in the cause and served on the party making service; otherwise at that party's place of residence.

☐ **(BY ELECTRONIC MAIL)**: By transmitting a true copy thereof to the electronic mail addresses as indicated below.

☒ **(BY CM/ECF SERVICE)**: I caused such document(s) to be delivered electronically via CM/ECF as noted herein.

☐ **(BY HAND DELIVERY)**: I caused to be delivered by hand each sealed envelope to the addressee(s) mentioned in the attached service/mailing list.

I declare under penalty of perjury under the laws of the United States that the above is true and correct and was executed on **February 11, 2019**, at Los Angeles, California.

_____
MELANIE DAVIS

1
CERTIFICATE OF SERVICE
Case No. 5:18-cv-00273-JGB (SPX)

HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
310-909-8000

303198573V1 1005257

# SERVICE LIST

*William C. Watson, et al. v. Ocwen Loan Servicing, LLC, et al.*
Case No. 5:18-cv-00273-JGB (SPX)

| | |
|---|---|
| Robert Alexander Bonito (SBN 113341)<br>ROBERT A BONITO AND ASSOCIATES<br>8 Bristol Court<br>Rancho Mirage, CA 92270<br>Phone: 714-325-4475<br>Email: bonitolaw@aol.com | Plaintiff WILLIAM C. WATSON |

1
SERVICE LIST
Case No. 5:18-cv-00273-JGB (SPX)
303198573V1 1005257

HINSHAW & CULBERTSON LLP
11601 Wilshire Blvd.
Suite 800
Los Angeles, CA 90025
310-909-8000